F I L E D
**United States Court of Appeals
Tenth Circuit**

**NOV 13 1998**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ELGIN PHILLIPS,

Defendant-Appellant.

No. 97-1333
(D.C. No. 96-CR-389-S)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON, BARRETT,** and **TACHA** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Elgin Phillips appeals his jury convictions of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and of use and carrying of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He contends that (1) the district court erred in denying his motion for a mistrial or alternatively for the exclusion of the testimony of rebuttal witnesses; (2) the prosecution's closing argument was improper, entitling him to a new trial; and (3) there was insufficient evidence to support his § 924(c)(1) conviction for carrying a firearm. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Background

On the afternoon of August 27, 1996, Denver police officers Sanchez and Delmonico were patrolling a north Denver neighborhood looking for suspects or witnesses to an incident in which someone shot out a window on a patrol car. In the course of their patrol, they stopped Phillips for running a stop sign. Officer Delmonico spotted a black, soft-sided briefcase on the back seat of his car. The briefcase had a bulge which led Officer Delmonico to believe that it might contain a weapon. After Phillips had exited the vehicle, Officer Delmonico removed the briefcase from the car and opened it. Inside, he found a large bag of crack cocaine and a gun. During an inventory search of the briefcase, officers

also found papers relating to Phillips and his oldest daughter, Joy Phillips. Phillips was arrested and subsequently indicted for the present offenses.

The government tried Phillips twice. The district court set aside the jury's guilty verdict after the first trial. [1] Phillips' defense theory was the same in both trials. He admitted that the briefcase was found in his car, but argued that it belonged to an acquaintance, Michael Tucker. Michael Tucker died before the first trial and did not testify.

On the morning of the second trial, the government served on the defense a pleading entitled "government's witness supplement," which noted its intent to present a rebuttal case in the event that a defense case was presented. The pleading did not identify the rebuttal witnesses which the government intended to call.

During voir dire, the government sought and obtained an ex parte hearing at which it disclosed to the court the identities of its two rebuttal witnesses and their anticipated testimony. Neither witness had been called during the first trial. The government indicated that it had just discovered the rebuttal witnesses and that

---

[1] The district court set aside the convictions reached in the first trial because of the possibility that the jurors had relied on unadmitted evidence in reaching their verdict. After it had retired to deliberate, the jury discovered a business card in a concealed compartment inside the briefcase. The jury matched a telephone number on the business card with an entry on a telephone bill for the cellular phone subscribed to by Phillips' mother.

both of them were afraid of Phillips and of his family. Although an order requiring disclosure of witnesses was in effect, the district court ruled that the government did not have to disclose the identities of the rebuttal witnesses or the substance of their testimony to the defense until the defense case was complete.

The defense put on much the same case as it had presented during the first trial. Phillips testified that he had given Michael Tucker and his girlfriend, Rose Nelson, a ride in his car the morning of August 27, and dropped them off at Nelson's mother's house. He stated he was unaware that Michael Tucker had left the briefcase inside his car until the officers found it there. He denied that he had left the paperwork involving his daughter inside the briefcase. He asserted instead that at the time of his arrest, the paperwork had been strewn on the car's back seat. Phillips also offered an innocent explanation for the large amount of cash officers found on his person at the time of arrest.

Rose Nelson testified for the defense that she had been Tucker's girlfriend before he died; that she and Tucker had met Phillips at a Denny's restaurant on the morning of August 27, 1996; that Phillips gave them a ride in his car; and that Tucker was carrying a black briefcase when he left Denny's. She further testified that she and Tucker got into an argument while Phillips was driving them to get tickets for a concert that evening; that after the argument, Phillips drove them to her mother's house and they exited the vehicle; and that Tucker did not have the

-4-

briefcase with him after he left the car and appeared very agitated after Phillips drove away.

After the defense rested, the government called its first rebuttal witness, Sharon Tave, Michael Tucker' mother. Tave testified that on August 27, 1996, the day Phillips was arrested, Michael Tucker was with her in Louisiana registering for college.

Before the defense had an opportunity to cross-examine Tave, the government handed defense counsel a report which summarized the testimony of its other rebuttal witness, Jendaya Robinson. The report indicated that Robinson had been Tucker's girlfriend before he died and that Phillips had offered her money to testify to the same story that Rose Nelson had presented.

Counsel expressed his concern to the court that if the report were true, it presented him with an ethical problem, because the report described what could be construed as criminal activity. He requested a mistrial, which the district court denied. At his request, however, the district court allowed the government to make a proffer of Robinson's testimony outside the presence of the jury, during which defense counsel cross-examined her. Afterwards, defense counsel renewed his motion for mistrial and moved in the alternative to exclude Robinson's testimony. The court denied both motions.

When proceedings resumed the next morning, Robinson took the stand. She testified consistently with the government's report. Phillips took the stand in surrebuttal, against counsel's advice. Defense counsel attempted but was unable to obtain a stipulation from the government to have both sides waive closing argument. In the prosecutor's closing argument, she stated several times that Phillips and his witnesses had lied and that he had suborned perjury. Defense counsel presented a brief closing argument which did not address Phillips' theory of the case.

Discussion

I. Unlisted Rebuttal Witnesses

Phillips argues that the district court should either have granted his motion for mistrial or excluded the undisclosed rebuttal witnesses because of unfair prejudice. "We review the admission of testimony from an unlisted rebuttal witness for abuse of discretion." United States v. Talk, 13 F.3d 369, 371 (10th Cir. 1993).

He argues, first, that the government was under a disclosure order requiring it to disclose its witnesses. This argument misses the mark, because after the ex parte hearing, the district court relieved the government of its obligation to disclose the rebuttal witnesses. It is that decision which Phillips must attack, as he does in his remaining arguments.

Phillips argues that the government had a duty to disclose the witnesses to him because the prosecutor told the court they were afraid of him. This fear, he claims, was potential impeachment material pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Phillips speculates that had he known that the witnesses were afraid of him, and who they were, he might have been able to show there was "bad blood" between the witnesses and himself and thereby to impeach their testimony on the basis of bias or prejudice.

Brady does not create a general constitutional right to discovery in criminal cases. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977). It only requires disclosure of favorable evidence which is material to either guilt or punishment. See Brady, 373 U.S. at 87. Evidence is "material" when, had it been disclosed, "there [would have been] a reasonable probability of a different result at trial." United States v. Woodlee, 136 F.3d 1399, 1411 (10th Cir.), cert. denied, No. 97-9239, 1998 WL 289773 (U.S. Oct. 5, 1998). Phillips' argument is purely speculative. He fails to establish that any material evidence was actually withheld. We reject his Brady claim.

Phillips next argues that it was unfair for the government to withhold the names of the witnesses because the prosecution had already been exposed to his defense during the first trial. He fails to show why the government's advance knowledge of his defense strategy obligated it not to use undisclosed witnesses.

Use of a surprise witness or unexpected evidence, without more, does not violate a defendant's constitutional rights.    See Weatherford , 429 U.S. at 560.

Phillips also argues that by not requiring advance disclosure, the district court deprived him of an opportunity to investigate the credibility of the rebuttal witnesses.  The district court allowed Phillips' counsel to cross-examine Robinson outside the presence of the jury and to prepare overnight for her testimony and for his cross-examination of Tave.  Phillips contends that these steps were an insufficient substitute for a full investigation of the undisclosed rebuttal witnesses.  Because Phillips' counsel did not request a continuance to conduct further investigation, however, we must reject this argument.  We conclude that the district court did not abuse its discretion in allowing the government to present the testimony of the undisclosed rebuttal witnesses.

II.  Failure to grant mistrial

As part of his argument concerning advance disclosure, Phillips argues that the district court should have granted his attorney's motion for mistrial.  His attorney made the motion after it became clear that Robinson would testify that his client had attempted to bribe her to testify falsely.  Analytically, this is a

separate claim from Phillips' claim about disclosure of witnesses, [2] and so we analyze it separately.

We must first narrow Phillips' claim to matters that may be considered in this appeal. In making his argument about the mistrial, Phillips argues that his attorney should have remained a vigorous advocate for Phillips' theory of the case after the motion for mistrial was denied. We are not concerned here, however, with what Phillips' counsel did after the motion for mistrial was denied. If Phillips' attorney pursued an improper strategy as the result of the denial of his motion for mistrial, that may be grounds for a claim of ineffective assistance of counsel, but such a claim should be brought on collateral proceedings rather than in this direct appeal. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995).

The real issue presented is whether the revelation that Phillips and his witness may have offered perjured testimony entitled Phillips to a mistrial. The answer clearly is no. Where a defendant "put[s] into evidence the testimony of which he now complains" and "ill-advisedly cho[oses] to present evidence which [is] subject to devastating impeachment," he "must accept the consequences of the

---

[2]     Phillips attempts to tie this claim to the district court's refusal to require disclosure of witnesses. His argument on this point is unconvincing, however.

evidence he offers." See United States v. Funt , 896 F.2d 1288, 1296 (11th Cir. 1990).

A similar analysis would apply even if counsel had been certain the evidence was perjurious. The additional fact that defense counsel faces an ethical dilemma where he knows his client has presented perjured testimony is not grounds for a mistrial. Faced with perjured testimony, defense counsel is responsible for taking "reasonable remedial measures," Colo. R. of Prof'l Conduct 3.3(a)(4), such as seeking to withdraw from representation or, as counsel did in this case, refusing to present the defense theory in closing argument. Phillips fails to substantiate his argument that the proper remedy for the ethical dilemmas posed here was a mistrial. "It would be a perversion of adversary process to permit a party to obtain a mistrial based on his own evidence." Funt, 896 F.2d at 1297 n.7.

III. Improper Argument by Prosecutor

Phillips next argues that the prosecutor in closing argument improperly attacked the credibility of defense witnesses, [3] and vouched for the credibility of

_____

[3] He complains of the following remarks by the prosecutor: (1) "Rose Nelson owed [Tucker and his mother] a big favor, and she paid them back because she got on that stand and she lied to you," R. Vol. 15 at 324-25; (2) "[D]efendant got up on the stand, and he told you Michael Tucker left the drugs in that car, and that, ladies and gentlemen, was a lie. It was a flat out, bald-faced lie," id. at 326; (3) "What went on here, ladies and gentlemen, was perjury,

(continued...)

the government's own witnesses.   [4]   Since counsel did not object when these comments were made, we review them for plain error.        See United States v. Nichols , 21 F.3d 1016, 1018 (10th Cir. 1994).  We will reverse a conviction for plain error only in circumstances where a miscarriage of justice would otherwise result.  See id.

Although the prosecutor's comments here were improper,        see id., we cannot say that they rise to the level of plain error.  Conflicting testimony about Phillips' story required the jury to conclude that someone was lying.  Taken in context, the comment concerning Tave's credibility underscores her lack of motivation to lie.  The prosecutor immediately followed the comment by exhorting the jury to examine the evidence rather than simply taking Tave at her word.  See R. Vol. 15 at 326.

Moreover, it does not appear that the prosecutor made the comments to distract or mislead the jury.  The evidence against Phillips was overwhelming.  The district court instructed the jury that arguments of counsel were not evidence

---

[3](...continued)
with a clear attempt to buy witnesses, to buy a defense and to suborn perjury. That's what Elgin Phillips did in this courtroom,"        id. at 326-27; (4) "Ladies and gentlemen, I submit to you that the entire defense case was a disgrace . . . . [With the exception of witness Bobby Fox the defense witnesses] lied to you from start to finish, a made-up, bought-for-$10,000 story,"        id. at 327.

[4]        Phillips complains of the prosecutor's statement that prosecution witness Sharon Tave "has no motive to lie to you.  She's telling you the truth," R. Vol. 15 at 325-26.

in the case, and that they were the sole judges of the credibility of witnesses. Under these circumstances, we cannot say that the remarks affected the outcome of his trial.  See United States v. Moore , 11 F.3d 475, 482 (4th Cir. 1993).

IV.  Conviction for "Carrying" a Firearm

In his final issue, Phillips contends that the evidence is insufficient to sustain his conviction for "carrying" a firearm during and in relation to a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1).  He argues that he did not "carry" a firearm because the gun involved was located inside a briefcase in the back seat of his car.  This argument is foreclosed by the Supreme Court's recent decision in  Muscarello v. United States , 118 S. Ct. 1911, 1919 (1998), in which the Supreme Court defined "carrying" for purposes of § 924(c)(1) broadly enough to encompass Phillips' conduct in this case.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge